IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANNY F. ATTERBURY, | ) | No. C 11-2387 LHK (PR) |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANT'S MOTION |
| v. | ) ) | FOR SUMMARY JUDGMENT |
| | ) ) | (Docket No. 13.) |
| DENISE DALY, | ) ) | |
| Defendant. | ) ) | |

Plaintiff, a former civilly committed insanity acquitee, brought this case under 42 U.S.C. § 1983 against Napa State Hospital's ("NSH") Chief of Police, Denise Daly ("Defendant"). The Court ordered service of Plaintiff's amended complaint ("AC") upon Defendant. On February 22, 2012, Defendant filed a motion for summary judgment. Plaintiff filed an opposition, and Defendant filed a reply. Thereafter, Plaintiff filed an unauthorized response to Defendant's reply. On July 16, 2012, the Court provided Plaintiff an opportunity to file a supplemental opposition pursuant to *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012). On September 6, 2012, Plaintiff filed his supplemental opposition.[1] On September 12, 2012, Defendant filed a supplemental reply.[2] Having carefully considered the underlying pleadings and for the reasons

---

[1] To the extent that Plaintiff attempts to bring new claims, i.e., ex post facto and deliberate indifference, they are untimely, and the Court will not address them.

[2] Defendant filed an opposition to Plaintiff's request for an extension of time pending an en banc opinion in *Haskell v. Harris*, 669 F.3d 1049, 1062 (9th Cir. 2012), *reh'g en banc*

discussed below, Defendant's motion for summary judgment is GRANTED.

## BACKGROUND[3]

On December 27, 1990, Plaintiff was transferred to Napa State Hospital ("NSH") after being found not guilty by reason of insanity for two counts of attempted second degree murder. (Decl. Daly at ¶ 4.) He was released into a conditional release program until his release was revoked for non-compliance. (*Id.*) Plaintiff was returned to NSH on May 2, 1997. (*Id.*)

In 1998, the California Legislature enacted the DNA and Forensic Identification Data Base and Data Bank Act ("DNA Act"), which required DNA and forensic identification data bank samples from all persons, including juveniles, for specific felony and misdemeanor offenses. Cal. Penal Code § 295. In 2004, California voters amended the DNA Act, and re-wrote the statute to include the mandate that, *inter alia*, any person who is found not guilty by reason of insanity of any felony offense must provide buccal swab samples, right thumb prints, and a full palm print impression of each hand for law enforcement identification analysis. California Penal Code § 296(a)(1) (2005).

Defendant has been the Chief of Police at NSH since June 2008. (Decl. Daly at ¶ 2.) On some unidentified date, the Superior Court ordered Plaintiff to be unconditionally released from NSH. (AC at 2.) On January 26, 2009, Defendant's department contacted Plaintiff to let him know that he was going to have a DNA sample taken from him by buccal swab (i.e., cheek swab), and have his palm prints taken, pursuant to California Penal Code § 296. (Decl. Daly at ¶ 6.) Plaintiff refused to comply. (*Id.*) On January 29, 2009, Plaintiff was again notified that, per the Proposition 69 Forensic Coordinator Program (Dkt. No. 11), Plaintiff was required to submit a DNA sample via buccal swab, and give palm prints. (Decl. Daly at ¶ 7, Ex. A.) Defendant directed NSH staff to not release Plaintiff until he provided a DNA sample, even after Plaintiff was ordered to be unconditionally released by the Superior Court. (AC at 1-2.) Plaintiff believes Defendant issued this instruction because Plaintiff had filed several complaints

---

*granted*, 686 F.3d 1121 (9th Cir. July 25, 2012). The Court has not discovered any such request by Plaintiff. However, to the extent Plaintiff makes such a request, it is DENIED.

[3] The following facts are taken in the light most favorable to Plaintiff.

about NSH and Defendant's department over "months and years."  (AC at 2.)  On February 11, 2009, a buccal swab and palm prints were collected from Plaintiff.  (Decl. Daly at ¶ 8, Ex. B.)  On February 20, 2009, Plaintiff was released from NSH.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  *Id.* at 324.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Plaintiff alleges that Defendant's refusal to release him until he submitted a DNA sample was motivated by retaliation.  Plaintiff also claims that the requirement of giving a DNA sample violated his right against unreasonable searches and seizures.  As to the retaliation claim, Defendant argues that she is entitled to judgment as a matter of law because Plaintiff has not

provided evidence of a genuine issue of material fact. Regarding the unreasonable search and seizure claim, Defendant argues that she is entitled to summary judgment based on qualified immunity.

I.      Retaliation

A claim may be stated under § 1983 where a plaintiff alleges retaliation by state actors for the exercise of his First Amendment rights. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment, and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. *See id.* at 287. Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, a plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this"). In order to create a genuine issue of material fact on retaliatory motive in the First Amendment context, a plaintiff must establish "'in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision; (2) evidence that the defendant expressed opposition to the speech; or (3) evidence that the defendant's proferred reason for the adverse action was pretextual.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted). A plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action. *Hartman v. Moore*, 547 U.S. 250, 259 (2006). The requisite causation must be but-for causation, without which the adverse action would not have been taken; we say that upon a prima facie case of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the disputed action. *Id.* at 260. If there is a finding that retaliation was not the but-for cause of the disputed action, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. *Id.*

Here, there is no evidence that Defendant knew about Plaintiff's "protected speech," i.e.,

1  that Plaintiff filed any complaints against NSH or Defendant, herself.  Indeed, Defendant states
2  that the Police Department has no record of having had received any complaints by Plaintiff
3  against her or her department.  (Decl. Daly at ¶ 11.)  Plaintiff does not dispute this.  Further,
4  there is an absence of evidence demonstrating the proximity in time between any alleged
5  complaints and Defendant's direction to collect a DNA sample from Plaintiff; Defendant's
6  opposition to Plaintiff's complaints; or any other supporting information that Defendant's given
7  reason for collecting the DNA sample was pretextual.  *See Corales*, 567 F.3d at 568.  In short,
8  Plaintiff has not met his burden of demonstrating that there is a genuine issue of material fact.
9      The Court notes that Defendant argues that the five-step test announced in *Rhodes v.*
10 *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005), is the proper test to analyze Plaintiff's
11 retaliation claim even though Plaintiff was a civilly committed person rather than a "prisoner."
12 *Rhodes* stated that "Within the prison context, a viable claim of First Amendment retaliation
13 entails five basic elements:  (1) An assertion that a state actor took some adverse action against
14 an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled
15 the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably
16 advance a legitimate correctional goal."  *Id.* (footnote omitted).  Here, Plaintiff was not housed
17 in a prison.  The Court notes that at least one court has used *Rhodes* to discuss a civil detainee's
18 claim of retaliation.  *See Endsley v. Luna*, No. 06-4100 DSF (SS), 2009 WL 3806266, at * 15
19 (C.D. Cal. Nov. 12, 2009).  However, that court applied *Rhodes* without explanation.
20 Nonetheless, even using the *Rhodes* test, Plaintiff's retaliation claim cannot survive summary
21 judgment.  First, there is no evidence that, even assuming the collection of Plaintiff's DNA was
22 an "adverse action," Defendant ordered the collection "because of" Plaintiff's complaints.  There
23 is no reasonable inference that Defendant knew about any of Plaintiff's alleged complaints, or
24 that Defendant had any personal interaction with Plaintiff.  Second, Plaintiff cannot demonstrate
25 that requiring a DNA sample did not reasonably advance a legitimate correctional goal.  *See,*
26 *e.g.*, *United States v. Kincade*, 379 F.3d 813, 838-39 (9th Cir. 2004) (discussing the federal DNA
27 Act and recognizing that DNA profiling can ensure that a parolee complies with requirements of
28 release, reduces recidivism, and brings closure to victims of crimes).  Defendant submits that the

1  purpose of the state mandate requiring DNA samples is to "assist law enforcement agencies in
2  the identification of missing and unidentified persons." (Decl. Daly, Ex. C.)  Accordingly,
3  Defendant is entitled to summary judgment on this claim.

4  II.     Search and Seizure

5       The Fourth Amendment proscribes "unreasonable searches and seizures." *Allen v. City
6  of Portland*, 73 F.3d 232, 235 (9th Cir. 1995). The ultimate test of reasonableness requires the
7  Court to balance the governmental interest that justifies the intrusion and the level of intrusion
8  into the privacy of the individual. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486,
9  1496 (9th Cir. 1996). Under the totality of the circumstances test, "[w]hether a search is
10 reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an
11 individual's privacy, and on the other, the degree to which it is needed for the promotion of
12 legitimate governmental interests." *See Samson v. California*, 547 U.S. 843, 848 (2006) (citation
13 and internal quotation marks omitted).

14      The defense of qualified immunity protects "government officials . . . from liability for
15 civil damages insofar as their conduct does not violate clearly established statutory or
16 constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,
17 457 U.S. 800, 818 (1982). A Court considering a claim of qualified immunity must determine:
18 (1) whether the Plaintiff has alleged the deprivation of an actual constitutional right, and
19 (2) whether such right was clearly established such that it would be clear to a reasonable officer
20 that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S.Ct.
21 808, 818 (2009). The Court may exercise its discretion in deciding which prong to address first,
22 in light of the particular circumstances of each case. *Id.* Granting summary judgment on the
23 ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in
24 light of the clearly established law, a reasonable officer could not have believed his conduct was
25 lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

26      The Supreme Court has cautioned that courts should not define clearly established law at
27 a high level of generality. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (rejecting the Ninth
28 Circuit's conclusion that the broad history and purposes of the Fourth Amendment supported a

finding that the right not to be arrested as a material witness in order to be investigated or preemptively detained was clearly established law); *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012) (rejecting as over-generalizing plaintiff's claim that it was clearly established law that a citizen detained as an enemy combatant was entitled to the same constitutional protections as convicted prisoners and ordinary criminal suspects). Rather, "the contours of the right must be sufficiently clear so that a reasonable official would know that his conduct violates that right." *Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995); *see, e.g.*, *Padilla*, 678 F.3d at 768 (official entitled to qualified immunity because considerable debate at that time regarding whether the specific interrogation techniques to which plaintiff was subjected amounted to torture indicate that there was no clearly established law regarding this issue).

Here, the Court concludes that the law was not so clearly established that it would have been clear to a reasonable officer that the requirement of collecting a DNA sample of a civilly committed person or insanity acquittee was an unreasonable search. Mandatory blood draws from incarcerated felons for DNA testing pursuant to the California DNA Act, Cal. Penal Code §§ 295-300.3, do not violate the Fourth Amendment. *Hamilton v. Brown*, 630 F.3d 889, 895-96 (9th Cir. 2011). The Ninth Circuit earlier had upheld mandatory testing of a smaller class of felons in *Rise v. Oregon*, 59 F.3d 1556, 1562 (9th Cir. 1995) (Oregon statute requiring convicted murderers and sex offenders to submit to blood testing for DNA analysis did not violate Fourth Amendment). Mandatory blood draws for DNA testing of persons on conditional release do not offend the Fourth Amendment. *See United States v. Kincade*, 379 F.3d 813, 839-840 (9th Cir. 2004) (en banc) (upholding constitutionality of DNA Analysis Backlog Elimination Act of 2000, *see* 42 U.S.C. § 14135a, requiring collection of DNA from convicted felons in custody and on probation, parole, or supervised release who had been convicted of certain violent crimes); *see also United States v. Kriesel*, 508 F.3d 941, 950 (9th Cir. 2007) (2004 amendment to DNA Act requiring collection of DNA from all convicted felons does not violate Fourth Amendment). The Ninth Circuit emphasized that in *Kriesel* that its ruling did not cover DNA collection from arrestees or non-citizens detained in the custody of the United States, who are required to submit to DNA collection under the 2006 version of the DNA Act. *Kriesel*, 508 F.3d at 948, 950. More

recently, the Ninth Circuit granted rehearing to consider the novel question of whether the taking of a buccal swab to collect DNA samples from all adults arrested for felonies pursuant to California's DNA Act violates an arrestee's Fourth Amendment rights. *See Haskell v. Harris*, 669 F.3d 1049, 1065 (9th Cir. 2012), *reh'g en banc granted*, 686 F.3d 1121 (9th Cir. July 25, 2012). Because the law was not clearly established that it would have been clear to a reasonable officer that the requirement of collecting a DNA sample of a civilly committed person or insanity acquittee was an unreasonable search, Defendant is entitled to qualified immunity.

In addition, a reasonable officer could believe under the circumstances that his conduct was lawful because the collection of a DNA sample via buccal swab was expressly authorized and mandated by state statute. *Cf.*, *Duarte v. Begrin*, No. 07-15584, 2008 WL 4831482, at *1 (9th Cir. 2008) (unpublished memorandum disposition) (implying that because the state statute expressly authorized entry in emergency circumstances, the defendant officer's conduct of entering the home on the grounds of exigent circumstances was reasonable); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("where a police officer has probable cause to arrest someone under a statute that a reasonable officer could believe is constitutional, the officer will be immune from liability even if the statute is later held to be unconstitutional.").

Accordingly, Defendant is entitled to summary judgment based on qualified immunity as to this claim.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED. Judgment shall be entered in favor of Defendant. The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED:  9/19/12

LUCY H. KOH
United States District Judge